Suni Munshani *vs.* Signal Lake Venture Fund II, LP,
& others.[1]

No. 02-P-1377.

Suffolk. December 4, 2003. - March 26, 2004.

Present: Lenk, Mills, & Trainor, JJ.

*Fraud. Practice, Civil,* Fraud, Dismissal.

The judge in a civil action was justified in concluding that the plaintiff's
conduct in manufacturing evidence, swearing to its authenticity, and
continuing to insist on its authenticity for more than seven months while
an expert investigated the matter constituted a fraud on the court [718-
721]; moreover, the judge, in the exercise of inherent powers, acted within
his discretion in imposing the ultimate sanction of dismissal of the
complaint [721-722].

Civil action commenced in the Superior Court Department on
December 19, 2000.

A final judgment dismissing the complaint with prejudice was
entered by *Allan van Gestel*, J.

*Scott P. Lopez* for the plaintiff.

*Carl D. Bernstein*, of New York (*Joseph F. Hardcastle* with
him) for the defendants.

Mills, J. The plaintiff, Suni Munshani (Munshani), appeals
from a Superior Court judgment that dismissed his complaint
based on the judge's finding that Munshani committed a fraud
on the court by manufacturing evidence, swearing to its
authenticity, and continuing to insist on its authenticity for more
than seven months while an expert investigated the matter. A
related decision by the same judge ordered Munshani to pay the
costs and fees of the court's expert and the defendants' at-

---

[1]Signal Lake II, LLC; Signal Lake II Strategic Partners, LLC; Signal Lake
Management, LLC; Barton W. Stuck; and Michael E. Weingarten.

torney's fees and costs in connection with fraud investigation.[2] In this appeal, Munshani essentially concedes that he fabricated evidence and submitted a false affidavit, but argues that the sanction of dismissal was inappropriate in the circumstances and that the judge's conclusion that Munshani's intentional misconduct constituted a fraud on the court was wrong as matter of law.

We affirm.

1. *Background.* On December 18, 2000, Munshani commenced this action seeking $25 million in damages on theories of breach of contract, unjust enrichment, and breach of G. L. c. 93A. He alleged oral promises made by the individual defendants, Barton W. Stuck and Michael E. Weingarten, to Munshani, on which Munshani purportedly relied as an inducement to raise capital for Stuck and Weingarten. These individual defendants are in the venture capital business and both are founders, shareholders, and managing directors of defendant Signal Lake II, LLC. Their largest single investment was in a company called Terago Communications, Inc. (Terago), on whose board both individual defendants served.

In their answer and counterclaim, the defendants denied Munshani's claim and asserted, among other things, that Munshani had lied to them about his background concerning involvement in litigation and bankruptcy. While acknowledging there had been discussions with Munshani concerning his potential role and compensation by the defendants, the defendants asserted that there was never any agreement between the parties, principally because Munshani kept changing and increasing his demands. Among the defendants' defenses to Munshani's claim for breach of contract was a Statute of Frauds affirmative defense.

At the time he initiated the State court proceedings at issue in this appeal, Munshani also commenced a companion action in the United States District Court for the District of Massachusetts against Terago, claiming he was entitled to 1.2 million shares of Terago stock based on the same alleged services that formed the

---

[2]Munshani does not appeal the order to pay costs and attorney's fees. In addition, he expressly concedes them as appropriate in his appellate brief.

basis for his claims in the State court action.[3] Munshani successfully opposed the defendants' motion to dismiss the Federal complaint based on a Statute of Frauds defense by submitting an electronic communication (e-mail) he allegedly received from Terago's president. The Federal judge concluded that the e-mail sufficed, at least for purposes of a motion to dismiss, to take the case out of the Statute of Frauds. The same e-mail was subsequently submitted in the State court proceedings. It is this e-mail, which was not in fact written or sent by Terago's president, that is at the heart of this appeal.

On February 16, 2001, alleging that the e-mail submitted in the Federal case was fraudulent, the defendants moved in the State court action for an order seeking the preservation and production for copying all of Munshani's computer hard drives and related back-up tapes and for expedited discovery. Munshani opposed the motion, while also recognizing the "extremely serious [nature of the] accusations." With his opposition, and a copy of the e-mail at issue, Munshani submitted an affidavit (as he had also filed in Federal court) unequivocally stating, "I did not tamper or alter the e-mail in any way." Munshani acknowledged that Hemant Trivedi (Terago's president and the purported sender of the e-mail in question) had prepared an affidavit stating that Trivedi had not sent the e-mail at issue, and Munshani correctly recognized that "[t]he record suggests that either Munshani or Trivedi has submitted a false affidavit." Munshani thus proposed that a neutral expert be appointed by the Superior Court judge to investigate the "extremely serious" allegations. On March 9, 2001, the judge accepted Munshani's proposal and appointed a neutral expert to investigate the allegations relating to the e-mail's authenticity.

During the several months of investigation, the parties appeared before the same Superior Court judge on numerous occasions, including in connection with Munshani's requests to stay discovery until the investigation was completed as well as on various other matters related to the investigation. At no point during that time did Munshani confess to his fraud. To the

---

[3]Munshani *vs*. Terago Communications, Inc., & another, U.S. Dist. Ct., No. 00CV12614 RGS (D. Mass.).

contrary, he permitted the investigation to continue and perpetuated the charade.

On September 12, 2001, the neutral expert submitted a 147-page report in which he concluded that the e-mail was "clearly not authentic." The judge allowed twenty-one days for comment on the report. Munshani filed no objections but, on the very last day of the comment period, submitted a written response invoking his privilege against self-incrimination pursuant to the Fifth Amendment of the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. Munshani's response continued, stating that he "therefore declines to testify about or respond to the [expert's report]." The judge accepted the expert's report in its entirety and adopted it as his findings in the matter. In his order, the judge inferred from Munshani's response that his affidavit concerning the e-mail was wholly false and a deliberate and intentional fraud on the court. Such affidavit had set in motion a number of hearings and a detailed investigation by the court-appointed expert. The judge noted that throughout the entire process Munshani remained silent and never once came forward to reveal his fraudulent conduct. The judge thus dismissed Munshani's complaint with prejudice and ordered him to pay the costs and fees of the expert, as well as the defendants' attorney's fees and costs related to the discovery of Munshani's fraud.

Munshani now claims that the dismissal was an abuse of discretion because his conduct involved a collateral discovery issue that was unrelated to the merits of any claim or defense in the State case, and that the judge's decision was "ill considered." Munshani also asserts that the judge's "finding" that the e-mail and affidavit were material was clearly erroneous, as was his "finding" that Munshani's conduct constituted a fraud on the court.[4] More specifically, Munshani suggests that his conduct did not amount to a fraud on the court because: (1) it was an isolated instance of perjury, rather than an "unconscionable scheme"; (2) his conduct "had absolutely no impact on the trier of fact"; and (3) his conduct did not unfairly hamper the presentation of the defendants' claims or defenses.

---

[4]The judge's determinations of materiality and fraud on the court were based upon an analysis of facts and constituted rulings of law.

2. *Discussion.* The judge characterized Munshani's conduct as intentional fabrication, gross abuse of the court and the parties, tampering with the fair administration of justice, and disrespectful. His conclusion that Munshani had committed a "fraud on the court" was based on a definition appearing in *Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A.*, 418 Mass. 596, 598 (1994), citing *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). We examine the judge's analysis of Munshani's conduct as "fraud on the court," and conclude that the judge was justified in concluding the conduct was fraudulent, and was within his discretion in imposing the ultimate sanction of dismissal. We also note that the sanction was appropriate in the circumstances even without any necessity of equating Munshani's conduct with the technical definition of "fraud on the court." In brief, the judge, in the exercise of inherent powers, acted within his discretion in ordering dismissal.

a. *Fraud on the court.* "Fraud on the court implies corrupt conduct and embraces 'only that species of fraud which does, or attempts to, defile the court itself.' " *Winthrop Corp.* v. *Lowenthal*, 29 Mass. App. Ct. 180, 184 (1990), quoting from *Pina* v. *McGill Dev. Corp.*, 388 Mass. 159, 165 (1983). Fraud on the court involves the most egregious misconduct, *Winthrop Corp.* v. *Lowenthal, supra,* and that misconduct may be by parties as well as by their attorneys, see *MacDonald* v. *MacDonald*, 407 Mass. 196, 201 n.9 (1990). The court in *Rockdale* adopted the definition of fraud on the court as detailed by the United States Court of Appeals for the First Circuit in *Aoude* v. *Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989): "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A.*, 418 Mass. at 598, quoting from *Aoude* v. *Mobil Oil Corp.*, 892 F.2d at 1118. The court in *Rockdale* also stated:

"When a fraud on the court is shown through clear and

convincing evidence to have been committed in an ongoing case, the trial judge has the inherent power to take action in response to the fraudulent conduct.[5] The judge has broad discretion to fashion a judicial response warranted by the fraudulent conduct. Dismissal of claims or of an entire action may be warranted . . . as may be the entry of a default judgment. We examine judicial responses to findings of fraud on the court for an abuse of discretion."

*Rockdale Mgmt. Co.* v. *Shawmut Bank, N.A., supra.* (Citations omitted.)[6]

In the present case, the record, including the expert's comprehensive report, convincingly establishes that Munshani set in motion an unconscionable scheme calculated to interfere with the court's ability impartially to adjudicate a matter in accordance with applicable rules. The judge properly determined that Munshani engaged in the scheme and attempted to deceive two courts. Munshani's conduct was not limited only to the fabrication of the disputed e-mail, or its submission to the court with a false affidavit, but included several months of additional charade, attempting to hide the fabrication. The judge was justified in concluding that Munshani's fraud amounted to an unconscionable scheme to deceive the court.

Examination of the complaint, the defendants' answers (including amended counterclaims), the relationships between the parties in the Federal action and those in the State action, and the nature of both State and Federal claims involving alleged oral agreements against which the defendants interposed a Statute of Frauds defense, makes clear to us that Munshani's conduct, as well as the falsified documents, were not "collateral" to the State court proceeding. Pretrial discovery, in our view, is not "collateral" when part of substantial litigation. Furthermore, the defendants' assertion that the parties' credibility was the centerpiece to this litigation appears justified in the record.

[5]"It strikes us as elementary that a . . . court possesses the inherent power to deny the court's processes to one who defiles the judicial system by committing a fraud on the court." *Aoude* v. *Mobil Oil Corp.*, 892 F.2d at 1118.

[6]Nothing in *Rockdale* suggests that dismissal is appropriate *only* in cases of fraud on the court. We do not read *Rockdale* as placing any limitation on a court's inherent power to act appropriately in response to conduct that is subversive of the office and responsibility of the judiciary.

The judge also fairly could conclude that Munshani's behavior was calculated to influence the judge's determination of requested pretrial discovery orders, with the intended result being a hampered presentation of the defendants' defenses and counterclaims. For example, the judge found that Munshani fabricated evidence and caused his lawyer to submit the fabricated evidence in successful opposition to a motion to dismiss his companion Federal action, and to submit to both the Federal court and the State court an affidavit attesting to the authenticity of the fabricated e-mail. In support of their motion to preserve electronic evidence and expedite discovery, the defendants submitted an expert's affidavit asserting that the e-mail was fraudulent. Munshani still admitted nothing, but suggested that the judge appoint an independent expert, insisting that he had been "wrongly and irresponsibly accused" of "perpetrating a fraud." In sum, Munshani sought to gain tactical advantages against the defendants "while simultaneously throwing a large monkey wrench into the judicial machinery." *Aoude* v. *Mobil Oil Corp.*, 892 F.2d at 1118.

While Munshani claims that his conduct "had absolutely no impact on the trier of fact," the judge made specific note that the conduct "set in motion a number of hearings and a detailed investigation by the Court's appointed expert" and that the court and the defendants were "made dupes to his actions" and "spent countless hours trying to sort out [the fraud]." The judge also found that "[h]ad Munshani succeeded with his fraud, he could have dramatically changed the face of the case . . . to the serious detriment of the defendants and the Court as well."

We hold that the judge properly found that Munshani had committed a fraud on the court irrespective of whether his conduct comported in all technical detail with the few available definitions of such fraud, although we nevertheless hold that it did. The judge's memorandum reveals thoughtful consideration of the difficulty of uncovering sophisticated computer fraud and the need to deter future attempts by litigants to avail themselves of what might otherwise be viewed as a low-risk means of gaining an advantage in high stakes litigation. As the trial court judge pointed out:

"All courts are at the mercy of litigants and their advocates

. . . in the often difficult search for truth. The ability to discover fraud in the process, particularly sophisticated computer fraud, is greatly limited. Thus, the imposition of strong sanctions is one of the very few ways of deterring such activity in the future. This Court intends such a message here."

b. *Dismissal as sanction.* The ultimate sanction of dismissal is not limited to instances of behavior that are technically defined as fraud on the court. See *Enlace Mercantil Internacional, Inc.* v. *Senior Indus., Inc.*, 848 F.2d 315, 317 (1st Cir. 1988) (delay can constitute extreme misconduct justifying dismissal); *Robson* v. *Hallenbeck*, 81 F.3d 1, 2 (1st Cir. 1996) (range of circumstances where court has authority to dismiss case is so vast as to "defy mechanical rules"); *Tower Ventures, Inc.* v. *Westfield*, 296 F.3d 43, 46 (1st Cir. 2002) (dismissal affirmed where zoning applicant repeatedly failed to comply with discovery scheduling order for no good reason).

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson* v. *Dunn*, 19 U.S. (6 Wheat.) 204, 227 (1821). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link* v. *Wabash R.R. Co.*, 370 U.S. 626, 630-631 (1962).

Here, the judge's utilization of the dismissal sanction was not only appropriate on the facts of this case, but was a realistic measure undertaken to protect the integrity of the pending litigation and the Superior Court, as well as to send an appropriate message to those who would so abuse the courts of the Commonwealth. To limit, as Munshani suggests, punishment for such conduct to repayment of the costs of uncovering the fraud could actually encourage similar fraud in other high stakes cases. A devious litigant might embark on a scheme to engage in complex electronic fraud calculating the possibility that, even if caught, he or she could simply pay the bill and proceed with the litigation. The judge here imposed a sanction that allowed zero tolerance for sophisticated computer fraud and evidence tampering. That sanction was within the judge's discretion.

Munshani devotes much of his brief to arguing that the judge failed to apply the proper factors before invoking the sanction of dismissal in this case. Specifically, Munshani argues that the judge should have, but did not, consider the five specific factors discussed by this court in *Keene* v. *Brigham & Women's Hosp., Inc.*, 56 Mass. App. Ct. 10, 21 (2002), *S.C.*, 439 Mass. 223 (2003). That case concerned the entry of a default as a sanction for the defendants' failure to produce lost records pursuant to Mass.R.Civ.P. 37(b)(2)(C), as amended, 390 Mass. 1208 (1984). The flaw in Munshani's analysis is that the *Keene* factors applied to sanctions for nonwilful failure to comply with discovery orders, i.e., to records that had been lost, not the significantly more egregious type of conduct which is at issue in this case. Dismissal, an admittedly drastic sanction to be utilized only in extreme situations, see *Monahan* v. *Washburn*, 400 Mass. 126, 128 (1987), was warranted here.

*Judgment affirmed.*