Greco, J.
What began as a garden-variety motor vehicle tort action ended with a dismissal, a referral to the Attorney General’s Office for investigation of possible fraud and this appeal by the plaintiff. The complaint arose out of an alleged *157 automobile accident on February 5, 2000. The plaintiff, Mitat Cela (“Cela”), had had an unrelated accident a month earlier, on January 7, 2000. The same chiropractor, Deborah Mager (“Dr. Mager”), treated him after both accidents. The defendants first raised an issue of fraud in this case when they filed a motion to dismiss in October of 2003. The record contains only the first page of that motion from which we can only glean that the fraud related to the loss of records by Dr. Mager. The motion to dismiss was denied without prejudice “upon [the court’s] finding that any alleged fraud committed in the case would be attributable to a witness and not a party.”
The fraud issue resurfaced, however, in April of 2004, when the defendants filed a motion in limine to exclude from the trial any mention of Dr. Mager’s treatment of the plaintiff, or her bills for that treatment. Obviously, any such exclusion would have precluded the plaintiff from recovering damages not only for his medical expenses, but also for pain and suffering because he could not have satisfied the statutory threshold of G.L.c. 231, §6D. The gist of the defendants’ argument on the motion in limine was that the medical records were inherently contradictory, that Dr. Mager billed twice for the same treatment, and that she “created reports and notes for office visits that did not take place.” After a hearing on the motion, the judge found that on May 6, 2003, Dr. Mager represented to defense counsel that her records had been destroyed in a flood; that the defendants’ insurer subsequently “found” these records; that the records revealed that the insurer was “double billed” for the same treatment; and that “contradictory treatment records were created by [Dr. Mager] indicating that the plaintiff was suffering from soft tissue injuries associated with one accident while recovering nicely from the other.” In the trial judge’s assessment, “[c]learly, something [was] wrong here.” While noting that Dr. Mager maintained that the confusion in the records was the result of “an honest mistake,” the judge stated that “such ‘mistakes’ can result in injury to patients or worse.” In his view, the evidence “raise [d] a serious question of automobile insurance fraud.” The judge also questioned the veracity of Dr. Mager’s statement that her records were lost in a flood since the records were then before the court. In fact, he found Dr. Mager’s testimony “completely unreliable” and struck it from the record. Based on these findings, the trial judge essentially invited the defendants to bring another motion to dismiss and instructed the Clerk’s Office to transmit his findings and the exhibits from the hearing to the Office of the Attorney General for investigation.
The defendants filed a second motion to dismiss. After hearing and based on his prior findings, the judge allowed the motion, stating:
[T]he case does have an odor to it, the odor that it has to it is one of insurance fraud. And unless [the plaintiff] can come up with additional evidence to suggest to me that there’s other medical evidence that would establish what his treatment was, this entire situation is where it properly belongs, within the department of the Attorney General for criminal investigation. Beyond that, I’m allowing [the] motion to dismiss, because there is no case here that [the plaintiff] could present to any trier of fact. The evidence in this case is so tainted at this point that it’s absolutely worthless.
Thus, the issue on this appeal could be couched as whether it was error to dismiss the case on the grounds that a fraud had been committed on the court, or whether it was error to preclude the plaintiff from presenting the testimony and records of Dr. Mager, thereby making it very unlikely that the plaintiff could prevail. Under either formulation, and the two are very much intertwined, the essential issue is to what extent may a trial judge act as a gatekeeper to prevent evidence which he considers unreliable and highly suspect from being presented to a jury. In *158 the circumstances of this case, we conclude that while the frustrations and concerns of the trial judge may have been understandable, dismissal was not warranted. (The records and testimony of Dr. Mager will be discussed in greater detail below).
1. Fraud. 'Fraud on the court occurs where & party tampers with the fair administration of justice by deceiving ‘the institutions set up to protect and safeguard the public’ or otherwise abusing or undermining the integrity of the judicial process [emphasis supplied].” Rockdale Mgm. Co. v. Shawmut Bank, N.A., 418 Mass. 596, 598 (1994), quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944). When such fraud “is shown through clear and convincing evidence to have been committed in an ongoing case, the trial judge has the inherent power to take action in response to the fraudulent conduct,” including dismissal of the action. Rockdale Mgm. Co., supra. While acknowledging that the existence of fraud must be resolved on a case by case basis, the Supreme Judicial Court noted that it was “important to reiterate that it must be shown through clear and convincing evidence that a party’s fraudulent conduct is part of a. pattern or scheme to defraud.” Id. at 600. The fraud in Rockdale was “a course of conduct taken by Rockdale intended improperly to influenc'e and deceive [the defendant bank] and the court.” Id. at 598-599. Specifically, Rockdale, through its president who was also named as a plaintiff, forged a letter in an effort to prove damages. The president “proffered that letter in response to interrogatories propounded by [the bank] ... testified under oath as to the authenticity of the letter, and recanted his testimony and admitted the forgery only after the deposition testimony of the nominal author of the letter revealed the deception.” Id. at 599.
In his concurring opinion in Rockdale, Justice O’Connor offered “a word of caution,” stating that
[t]he precious right of trial by jury is jeopardized by any suggestion that a jury case may be dismissed or the defendant may be defaulted whenever a motion judge or trial judge, after measuring a party’s credibility and without the benefit of an admission... [as in Rockdale], finds by ‘clear and convincing evidence’ that the party has committed perjury as ‘part of a pattern or scheme to defraud.’
In Justice O’Connor’s view, “in a jury case the question whether a party’s trial or deposition testimony is true or false ought to be for the jury, not the judge, to decide.” Id. at 601-602. Cases since Rockdale do not appear to have expanded its application beyond the boundaries suggested by Justice O’Connor. For example, in Munshani v. Signal Lake Venture Fund II, LP, 60 Mass. App. Ct. 714 (2004), the Appeals Court affirmed the dismissal of a complaint based on the trial judge’s “finding that [the plaintiff] committed a fraud on the court by manufacturing evidence, swearing to its authenticity, and continuing to insist on its authenticity for more than seven months while an expert investigated the matter.” Id. at 714. The plaintiff never disputed the findings of a neutral expert that the evidence was not authentic and elected instead to invoke his Fifth Amendment rights. The Court concluded that this was an “extreme” situation warranting the “admittedly drastic sanction” of dismissal. Id. at 722. On the other hand, in Sahin v. Sahin, 435 Mass. 396, 404-406 (2001), the claim of a wife that her husband committed a fraud on the court by “misrepresenting and failing to disclose significant financial information about [his business] during... divorce proceedings” was found “unavailing” even if true. The Supreme Judicial Court emphasized that the concept of a fraud on the court “embraces only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.” Id. at 406, quoting Pina v. McGill Develop. Corp., 388 Mass. 159, 165 (1983).
*159 In the case at bar, there is no “clear and convincing” evidence that a party had any role in a commission of a fraud on the court. And the trial judge never so found. In his written findings of June 15, 2004, the judge referred only to a “confusion” in the medical records and to “a serious issue of automobile insurance fraud.” At the hearing on the motion to dismiss, the judge spoke only of the “odor” of insurance fraud. On this record, the trial court’s ability to adjudicate impartially Cela’s motor vehicle tort action was not put at risk. First, there is no indication that Cela personally did anything wrong; thus we are not dealing with a fraud by a party or by a party’s attorney. Consequently, there is no admission or uncontroverted evidence of any wrongdoing by any party. The only admission of any wrongdoing of any sort is Dr. Mager’s admission that as a result of an error in her office, she double-billed the insurance company. There is no indication, however, that Cela played any role in that double-billing, knew of it, or profited by it. More generally, the trial court certainly would have had the capacity to make the appropriate adjustment in its calculation of damages if Cela prevailed.
The other concerns expressed by the trial judge, while potentially serious, were in dispute and thus turned on one’s assessment of Dr. Mager’s credibility. For example, a trial judge might react with a healthy dose of skepticism upon hearing of the doctor’s supposedly lost records, then hearing the doctor refer to records on her computer and then, ultimately, having the records produced in court. However, it was not implausible that Dr. Mager gave copies of her treatment records to Cela’s attorney before her own originals were destroyed, that the records previously given to the attorney were the ones before the court, and that the records retained in the memory of Dr. Mager’s computer were billing records only and did not relate to Cela’s treatment. Dr. Mager also offered an explanation for the inconsistencies in her records. Her notes relative to Cela’s first accident indicate, among other things, that on February 7, 2002, Cela could “look upward and reach above chest level to a slight degree, ... sit for a longer period of time and perform more daily tasks with less disabling pain,... [and] straighten up from a seated position without antalgia during the morning hours.” However, her records also contain a letter with the same February 7th date which presents a very different picture of Cela; i.e., of a man “holding his head in his hands,” walking “with an antalgic stoop,” with “total exhaustion etched on his face,” “unable to sleep due to intense and often sharp cervical spine pain,” and with “all active ranges of motion ... markedly limited.” As the trial judge noted, “something [was] wrong here"; but it is not clear what that something was. Was the doctor changing her diagnosis of Cela so that he would have a viable tort action and she would be able to reap the insurance benefits, or was it, as Dr. Mager maintained, simply a mistaken entry made on the notes related to Cela’s earlier accident which really belonged on the notes pertinent to the accident of February 5, 2000?
Resolution of the above questions depends on the credibility of a potential witness who is not a party in the case and is, thus, a matter “for the jury, not the judge, to decide.” Rockdale, supra at 602 (O’Connor, J., concurring). Compare Commonwealth v. Wilborne, 382 Mass. 241, 245 (1981) (‘To the extent that conflicting inferences are possible from the evidence, ‘it is for the jury to determine where the truth lies.’ Commonwealth v. Amazeen, 375 Mass. 73, 81 (1978).”) We recognize that a “judge has broad discretion to fashion a judicial response warranted by the fraudulent conduct.” Rockdale, supra, at 598. Here, however, the issue is whether fraud was found and, if so, whether such a finding was warranted by clear and convincing evidence. The issue is not the appropriateness of the judicial response.
2. Motion in Limine. The court’s dismissal of this action could also be viewed as the implicit allowance of the defendant’s motion in limine to exclude any evidence *160 of Dr. Mager’s treatment of the plaintiff. Without actually ruling on that motion, in dismissing the case, the trial judge found that since such evidence was “so tainted” as to be “worthless,” there would be “no case” to “present to any trier of fact.” The defendant argues on appeal that the trial judge was thus acting as a gatekeeper to preclude unreliable evidence from going before a jury. We conclude, however, that the trial judge could not have assumed such a role in the circumstances of this case. The defendant’s reliance on such cases as Commonwealth v. Lanigan, 419 Mass. 15, 24-26 (1994) is misplaced. The gatekeeper role contemplated in those cases related to a judge’s initial assessment of the reliability of the scientific “process or theory underlying the expert’s testimony.” Id. at 25. What is being challenged in this case is not the “process or theory” of chiropractic medicine, but only Dr. Mager’s credibility and honesty. Jurors are routinely required to make those types of assessments without any input or screening from a judge. Nor is a gatekeeper role contemplated with respect to the determination of whether a plaintiff has satisfied the threshold for pain and suffering damages set out in G.L.c. 231, §6D. In Victum v. Martin, 367 Mass. 404 (1975), cited by the defendant, the Supreme Judicial Court stated that even though the Appellate Division had implicitly concluded that “the asserted medical expenses ... were not credible either in nature or amount!,]” questions concerning those expenses, “relating as they do to the weight of the evidence” were for the trier of fact to decide. Id. at 410.
Based on the above considerations, the order dismissing the complaint is vacated and the case is returned to the Salem Division for trial.
So ordered.