## ADOPTION OF IRIS.[1]

Suffolk. April 9, 1998. - June 3, 1998.

Present: WILKINS, C.J., LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Adoption,* Dispensing with parent's consent, Care and protection. *Parent and Child,* Adoption, Dispensing with parent's consent to adoption, Care and protection of minor. *Supreme Judicial Court,* Superintendence of inferior courts. *Constitutional Law,* Double jeopardy. *Due Process of Law,* Child custody proceeding. *Evidence,* Child custody proceeding.

Principles of double jeopardy are not applicable to proceedings brought by the Department of Social Services for care and protection of minor children and to dispense with parental consent to adoption. [586]

The parents of a minor child failed to demonstrate that a Juvenile Court judge's order for a new trial on a combined petition of the Department of Social Services for care and protection and to dispense with parental consent to adoption violated their substantive due process rights to raise their own child. [587]

At a hearing, after remand, on a motion of the Department of Social Services for a new trial on a combined petition for care and protection and to dispense with parental consent to adoption, a Juvenile Court judge did not abuse his discretion in concluding that the evidence presented by the department, which, if credited, would support a finding of parental unfitness, was sufficient to warrant a retrial. [587-588]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 2, 1997.

The case was heard by *Abrams,* J.

*Deborah Sirotkin Butler* for the parents.

*Virginia A. Peel* for Department of Social Services.

*Leo J. Lydon* for the child.

IRELAND, J. The parents of a minor child, Iris, have appealed from the denial of relief under G. L. c. 211, § 3, by a single justice of this court. The parents asked the single justice to vacate an interlocutory order for a new trial issued by a judge

---

[1]The name is fictitious. This case concerns the child whose case was considered by the Appeals Court in *Adoption of Iris,* 43 Mass. App. Ct. 95 (1997). We use the same pseudonym.

in the Boston Division of the Juvenile Court Department. The trial was based on the combined petition of the Department of Social Services (department) for care and protection of Iris under G. L. c. 119, § 24, and to dispense with parental consent to adoption under G. L. c. 210, § 3.

We have considered the parents' appeal and now affirm the single justice's order denying relief.

1. *Background.* We begin by tracing the procedural history and background of the case, some of which has previously been reported by the Appeals Court. *Adoption of Iris*, 43 Mass. App. Ct. 95 (1997). In 1993, when she was one month old, Iris suffered a skull fracture causing hemorrhaging in her brain. The cause of and circumstances behind that injury have never been fully explained. The injury prompted the department to file a care and protection petition on Iris's behalf with the Juvenile Court, which led to the department's assuming temporary legal custody of the child. She was placed at that time in a foster home, where she presently remains.

Throughout the department's involvement with Iris, the parents have been unable to offer an explanation for the child's injury, although, apparently, they have cooperated with the department's numerous demands of them, including that they undergo psychological evaluations, participate in individual counseling, and visit Iris at every possible opportunity. See *Adoption of Iris, supra* at 104-105. On May 21, 1996, following a three-day trial, the judge adjudicated Iris to be in need of care and protection and dispensed with her parents' rights to consent to her adoption. The parents appealed.

In *Adoption of Iris, supra* at 106, the Appeals Court vacated the judgment and remanded the matter to the Juvenile Court for further proceedings. The Appeals Court concluded that the judge's findings, which focused primarily on a single, serious, and unexplained injury to the child, were "regrettably sparse," *id.* at 100, and failed to show clearly and convincingly that the parents were unfit, *id.* at 101. In pertinent part, the order of remand directed the Juvenile Court judge first to determine "whether the department's goal remains the termination of parental rights," *id.* at 106, and, if so, to determine "whether the department has sufficient additional evidence to warrant a new trial." *Id.* Finally, the Appeals Court ordered that any new trial should proceed "forthwith." *Id.*

On October 6, 1997, the same Juvenile Court judge who had

presided over the trial conducted a hearing at which the department stated its continued intentions both to pursue dispensing with the parents' rights to consent to Iris's adoption and, also, to place Iris for adoption with her current foster parent. The department then described the additional evidence that it hoped to present at a new trial. That evidence, according to the department, would include substantially more detail than was presented during the first trial concerning Iris's many special needs[2] and the exceptionally high level of care that she currently requires.[3] Through her attorney, Iris supported the department's motion for a new trial and, herself, outlined other, similar evidence that she, too, intended to introduce at a new trial.

The department went on to describe additional evidence — much of it not presented during the first trial — pertaining to Iris's unexplained head injury. The "new" evidence would include expert testimony from the physicians at Children's Hospital who had examined and treated Iris after she was taken there by her parents, testimony of all other persons who had had any interactions with Iris during the several days preceding the injury, and testimony of professionals who currently provide services to the child. According to the department, that additional evidence would help to clarify whether Iris's injury was most likely the result of inflicted, versus accidental, trauma; whether either parent had injured the child or knew who had; and whether either parent knew or should have known, prior to taking the child to Children's Hospital, that she had been seriously injured.

For their part, the parents opposed the motion for a new trial. They requested that the petition be dismissed and that custody of Iris be returned to them. The judge allowed the department's motion for a new trial, denied the parents' motion to dismiss the petition, and granted the child's motions for a court-ordered

---

[2]Iris is quadriplegic, has a seizure disorder for which she is prescribed medication, and wears leg casts. She has other special needs as well.

[3]She requires complete assistance with bathing, dressing herself, and brushing her teeth. Her foster mother provides her with thrice daily range-of-motion therapy in order to improve her fine and gross motor skills. She is placed in a special needs kindergarten program where she is assigned a nurse's aide to be with her at all times to ensure her physical safety. She receives physical, speech, and occupational therapy biweekly. In sum, Iris requires enormous amounts of support and structure in her daily routine. Much is required of her caregivers.

family evaluation and for fees and costs for certain expert witnesses. At the parents' request, the judge issued a written ruling briefly setting forth the anticipated additional evidence that he believed warranted a new trial.

Thereafter, on December 2, 1997, the parents filed their petition with the single justice asking for relief under G. L. c. 211, § 3. It appears that the Juvenile Court proceedings were stayed pending the outcome of the proceedings before the single justice, who conducted a hearing on the parents' petition on December 10, 1997. At approximately the same time, the parents also filed a late motion with the Appeals Court asking for a rehearing or for clarification of the precise meaning of the order of remand.[4]

In denying the G. L. c. 211, § 3, request for relief, the single justice restated the position that the parents could seek clarification from the Appeals Court as to the meaning of that court's opinion. She stated that, if the trial judge's written order allowing a new trial was inconsistent with that opinion, then the parents could seek relief through an alternate statutory provision, G. L. c. 231, § 118, and, on completion of a second trial, could also seek relief through normal appellate review. Pursuant to S.J.C. Rule 2:21, 421 Mass. 1303 (1995), the parents' appeal from the single justice's denial of relief was entered in this court.

2. *Relief under G. L. c. 211, § 3.* We note, first, that G. L. c. 231, § 118, does not afford the parents a possible basis for relief. That provision allows only appeals from interlocutory orders issued by the Superior Court, the Housing Court, or the Probate and Family Court, and not, as here, from an interlocutory order of the Juvenile Court. However, we grant extraordinary relief under G. L. c. 211, § 3, where it is shown both that

_____

[4]In an order denying the parents' motion, the Appeals Court concluded that the remand language in its *Adoption of Iris* opinion is "unambiguous." The court went on to amplify the meaning of the "sufficient additional evidence" language:

"If the department demonstrates that it has more evidence than it presented at trial which is probative of current parental unfitness and if the trial court is satisfied that the additional evidence is sufficiently more so as to render the department likely to meet its burden at a new trial of proving current parental unfitness by clear and convincing evidence, a new trial is warranted."

substantive rights have been violated and that the error cannot readily be cured through ordinary appellate processes. See *Care & Protection of Edith*, 421 Mass. 703, 707 (1996). We will exercise our discretionary powers under G. L. c. 211, § 3, "only in 'the most exceptional circumstances.' " *Planned Parenthood League of Mass., Inc.* v. *Operation Rescue*, 406 Mass. 701, 706 (1990), quoting *Costarelli* v. *Commonwealth*, 374 Mass. 677, 679 (1978). Absent a clear abuse of discretion or plain error of law, we will not disturb the order of a single justice denying relief under G. L. c. 211, § 3. *Department of Mental Retardation* v. *Kendrew*, 418 Mass. 50, 53 (1994). We see no such error or abuse of discretion by the single justice in refusing to vacate that order.

The parents claim that subjecting them to a new trial on the combined care and protection and termination of parental rights matters violates their substantive constitutional right to be free from double jeopardy. The parents raise the double jeopardy issue for the first time on appeal, and cite no authority as support for this claim other than a single case from the United States Court of Appeals for the Third Circuit which concluded that New Jersey's sexual offender registration and notification procedures did not constitute punishment for purposes of double jeopardy. *E.B.* v. *Verniero*, 119 F.3d 1077, 1105 (3d Cir. 1997), cert. denied sub nom. *W.P.* v. *Verniero*, 118 S. Ct. 1039 (1998). The *E.B.* case arose in a completely different context from this matter. Moreover, the result does not even support the parents' claim of double jeopardy.

We have previously rejected the claim that double jeopardy applies to care and protection proceedings initiated under G. L. c. 119. *Custody of a Minor*, 375 Mass. 733, 746 (1978). "Custody proceedings are not criminal in nature and, accordingly, the full panoply of constitutional rights afforded criminal defendants does not apply in these cases." *Custody of Two Minors*, 396 Mass. 610, 616 (1986). See *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 384 Mass. 707, 711 & n.10 (1981) (certain constitutional rights that attach in criminal cases do not apply in termination proceedings; additionally, any retrial on the department's petition is aimed not at punishing the parents but, rather, at protecting the child); *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 592 (1981), and cases cited. In sum, the retrial that has been ordered does not implicate principles of double jeopardy.

The parents next maintain that a retrial violates their substantive due process rights to "maintain[] the natural bond with their [child]." *Adoption of Iris, supra* at 102, quoting *Adoption of Katharine*, 42 Mass. App. Ct. 25, 27 (1997). It is true, of course, that biological parents have a fundamental, constitutionally protected interest in raising their own child; it is equally true that that right is not absolute and is not immune to State interference for compelling cause. *Care & Protection of Robert*, 408 Mass. 52, 60 (1990).

The parents fail to show how their right to raise Iris themselves cannot be vindicated through the normal appellate process. At a second trial, the department once again will be required to prove by clear and convincing evidence that the parents are unfit to do that and that adoption of Iris by her current foster parent serves her best interests. See *Adoption of Iris, supra* at 101. And on appellate review of any judgment resulting from a retrial, the parents may once again raise the claim that the evidence did not prove them clearly and convincingly unfit.

Finally, the parents contend that the Juvenile Court judge abused his discretion in ordering a new trial because, in their opinion, the department's proffer of "additional" evidence was insufficient under the standard articulated by the Appeals Court in *Adoption of Iris, supra* at 106. The order of remand states merely that a new trial is warranted if the Juvenile Court judge first determines that the department has *"sufficient additional evidence"* (emphasis supplied). *Id.* In the order clarifying its own remand language (which it found to be "unambiguous"), the Appeals Court characterized "additional" evidence as *"more evidence than [was] presented at trial,"* that could likely total up to clear and convincing proof of parental unfitness. Similarly, the single justice construed "additional" evidence to mean simply "more" evidence (such as testimony of expert witnesses) "that [was] not heard in the first trial."

The Appeals Court variously characterized the evidence and resulting findings from the first trial as "inadequate," *id.* at 96, "regrettably sparse," *id.* at 100, and "scant," *id.* at 101. The Appeals Court further observed that the department had presented its case "in a minimalist manner," *id.* at 106, using but one lay witness (a department social worker) and twelve unredacted exhibits "replete with multilevel hearsay." *Id.* at 100.

The department's proffer at the remand hearing of the ad-

ditional evidence that it expects to present at a second trial was obviously intended to shore up the weaknesses in its original case. The department now intends to mount its case through expert and nonexpert testimony that may shed more certain light on the exact circumstances surrounding Iris's head trauma. The department also intends to offer more detailed evidence than it originally presented concerning Iris's many special needs and the high level of care that she requires. Presumably, the department hopes through that evidence to show the parents unfit in part because they simply would be unable to care adequately for a child with such multiple special needs. Finally, the department expects to present more recent evidence describing the level of participation by the parents in recommended services and compliance by them with service plan tasks. All of that evidence — if credited by a trial judge — could conceiv-.ably add up to clear and convincing proof of parental unfitness.

As we have stated, the Appeals Court's order of remand in *Adoption of Iris, supra* at 106, permits the sort of additional evidence outlined by the department, so long as the sum total of that evidence could sufficiently support an ultimate conclusion of current parental unfitness. In acting on the motion for a new trial, the Juvenile Court judge obviously considered the department's (and the child's) proffer of the additional evidence that would be presented.

"The decision to grant . . . a new trial rests in the discretion of the trial judge, and an appellate court will not vacate such an order unless the judge has abused that discretion." *W. Oliver Tripp Co.* v. *American Hoechst Corp.*, 34 Mass. App. Ct. 744, 748 (1993), citing *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 520, cert. denied, 493 U.S. 894 (1989). Abuse of discretion here means "the failure to avoid idiosyncratic choice brought on by arbitrary determination, capricious disposition, or whimsical thinking." *W. Oliver Tripp Co., supra.* Gauged by that standard, the single justice did not err in concluding that the Juvenile Court judge had not abused his discretion by ordering a new trial after having considered in the aggregate the proposed additional evidence, and having considered at the same time the reasonably concise guidelines given him by the Appeals Court in its remand order. The single justice also did not abuse her discretion by denying relief under G. L. c. 211, § 3.

The order of the single justice is affirmed. The matter should proceed forthwith to a new trial.

*So ordered.*