Lu, John T., J.
INTRODUCTION
The plaintiff P.J. Keating Company (Keating) brought this case against the defendants Roads Corporation (Roads) and its former officer John F. Sarao, Jr. (Sarao) (collectively, Defendants) to collect outstanding debts allegedly arising out of the labor and materials Keating supplied to Roads as its subcontractor on a series of projects.
Keating has filed special motions to dismiss[2] counterclaims, pursuant to the anti-SLAPP statute, set forth at G.L.c. 231, §59H, which prohibits the Defendants from bringing their counterclaims if they are based on Keating’s protected petitioning activity.
BACKGROUND
For purposes of a special motion to dismiss, the court must “consider the pleadings and supporting and opposing affidavits stating the facts upon which the'liability or defense is based.” G.L.c. 231, §59H.
In 1992, Roads entered into a credit agreement with Keating pursuant to which Keating advanced credit to Roads in exchange for Roads’s promise to repay. Sarao signed the credit agreement on Roads’s behalf and “personally guarantee[d] payment of any and all obligations incurred by Roads and agree[d] to personally pay the same in event that Roads Corp. fails, neglects or for whatever the reason is unable to pay same.” Roads’s Opposition to Keating’s Special Motion to Dismiss, Exhibit 1 of Exhibit 6, Credit Agreement. Relying on the credit agreement and the guarantee, “Keating extended open credit to Roads and supplied various services and materials to Roads on a variety of construction projects.” Keating Amended Complaint, ¶6.
Keating alleges that it entered into contracts with Roads for at least thirty[3] construction projects between 1997 and 2004, all of which contain an identical provision concerning payment to Keating:
The amounts retained by [Roads] shall be paid to [Keating] within thirty (30) days after all the following conditions have been met: (a) the Owner has finally approved and accepted the Work; (b) the Owner has determined the final quantities for the Work; (c) the Owner has paid and [Roads] has received the amounts that the Owner retained for the Work; and (d) [Keating] has furnished to [Roads] evidence satisfactory to [Roads] that all of [Keating’s] laborers, mechanics, subcontractors, materialmen and suppliers have been paid in full for all amounts due to them for all of the labor, materials, equipment, supplies and other things that they furnished to [Keating] in connection with the performance of the Work. It is expressly acknowledged that receipt of payment by [Roads] from the Owner on account of the work performed by [Keating] shall be a condition precedent to any obligation of [Roads] to make payment to [Keating] of any such retained amounts.
Keating’s Memorandum of Law in Support of its Special Motion to Dismiss, at 11 (emphases and underlining in original), quoting Article V of contract.[4]
Keating alleges that it received some payments for its work on the contracts,[5] and that, in response to Keating’s periodic requests for the outstanding payments from Roads, Roads “largley agreed with the amounts due[,]” Keating Amended Complaint, ¶8, and advised Keating to “be patient.” Roads’s Opposition to Keating’s Special Motion to Dismiss, Exhibit 6, Donna St. Laurent Affidavit, ¶6. In October of 2006, Keating filed an action against Roads and Sarao, as the guarantor of Roads’s debts, seeking payment of the amounts still outstanding; Keating filed an amended complaint in January of 2007. Among the allegations in its amended complaint, Keating asserts that, to the extent the statute of limitations bars it from recovering payments on any of its contracts, “Roads and/or Sarao have waived and are estopped by their own actions and deeds from claiming the expiration of any statute of limitations.” Keating Amended Complaint, ¶8. Keating alleges that the Defendants breached the credit agreement (Count I) and violated G.L.c. 93A, §11 (Count III), and that it is entitled to recover in quantum meruit (Count II) based on the Defendants’ failure to pay pursuant to the credit agreement, “misrepresenting to and misleading Keating into forbearing suit within certain statutes of limitations by various promises to pay Keating, while knowing that those promises would not be kept...” Keating Amended Complaint, ¶11.
After several failures to effect service, and Keating’s attorney’s and the process server’s observations that Roads’s business location and the residence of its president, Eric Sarao, appeared abandoned, Keating sought and obtained from the clerk an entry of default pursuant to Mass.R.Civ.P. 65(a) as to both Roads and Sarao. About three months later, the Superior Court allowed Keating’s motion for default judgment and assessment of damages, ordering the Defendants to pay Keating $469,799.67 plus interest and costs. In seeking to remove the default judgment, Roads’s president, Eric Sarao, claimed that Keating never served him with its complaint and that his residence, where he had lived continuously for seven years, was not abandoned. Sarao, also seeking to remove the default judgment, explained in an affidavit that, suffering from anxiety and depression, he moved to Florida in November of 2005. A process server “delivered the complaint and other papers in this suit to [him] in Florida in January or early February of 2007 . . . [but he] remained anxious and depressed and unable to focus on or otherwise deal with the Keating situation normally and did nothing.” Keating’s Memorandum of Law in Support of its Special Motion to Dismiss, *214 Exhibit 3, John Sarao Affidavit (September 25, 2007), ¶10.
The court removed the default judgments against them, and Roads and Sarao filed counterclaims against Keating. In his counterclaim, Sarao alleges that Keating violated G.L.c. 93A by initiating an action and obtaining a judgment against Sarao “when it knew that the alleged obligations of Roads Corporation . . . were barred by the applicable statute of limitations, were unliquidated and in dispute and/or were otherwise not recoverable”; and by attributing “false and misleading statements to Sarao individually and/or to Roads including (i) that Roads agreed with amounts Keating claimed were due; (ii) that Roads waived the Statute of Limitations!;] and (iii) that Roads reaffirmed amounts due Keating all for the sole purpose of creating a claim against [Sarao], individually under the credit application/personal guaranty . . .” Sarao Counterclaim, S114(a)-(b).
Roads alleges that Keating intentionally made “fraudulent representations to the court and Roads Corporation with respect to the abandonment of dwellings, the waiver of the Statute of Limitations, and the validity of balances allegedly due and owing by Roads to [Keating].” Roads Counterclaim, ¶11. In its second counterclaim, Roads contends that Keating, by those fraudulent representations and its “attempted use of this Honorable Court to acquire a fraudulent judgment against Roads[,]” violated G.L.c. 93A, §11. Roads Counterclaim, ¶17.
DISCUSSION
Strategic Lawsuits Against Public Participation, or “SLAPP suits,” are designed “to intimidate opponents’ exercise of rights of petitioning and speech!,] targeting] people for[, inter alia,] ‘reporting violations of law, writing to government officials, attending public hearings, [and] testifying before government bodies . . .’ ” Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 161-62 (1998). By enacting G.L.c. 231, §59H, the so-called “anti-SLAPP statute,” “the Legislature intended to enact veiy broad protection for [those iypes of] petitioning activities!,]" at 162, but not so broad that it created an absolute privilege. Id. at 162-63 (acknowledging court’s role in “fashion[ing] a properly supported way to narrow the statute”); see Kobrin v. Gastfriend, 443 Mass. 327, 332 n.8 (2005) (court “seek[s] ... to limit the statute’s protection, in accordance with the legislative intent”).
“In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party’s exercise of its right of petition under the constitution of the United States or of the commonwealth,” G.L.c. 231, §59H, permits that party to “bring a special motion to dismiss].”[6] The statute defines “a party’s exercise of its right of petition” as
[1] any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [2] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; [3] any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body, or any other governmental proceeding; [4] any statement reasonably likely to enlist public participation in an effort to effect such consideration; or [5] any other statement falling within constitutional protection of the right to petition government.
G.L.c. 231, §59H; see Global NAPs, Inc. v. Verizon New England, Inc., 63 Mass.App.Ct. 600, 605 n.5 (2005) (items listed “are meant to be illustrative, not exhaustive”). In defining petitioning activity, the statute’s focus “is not on the plaintiffs claim, but rather on the petitioning activity that the special movant asserts bars the plaintiffs claim . . .” Duracraft Corp., 427 Mass. at 165 (emphasis in original).
The special movant asserting “protection for its petitioning activities . . . [must] make a threshold showing through the pleading and affidavits that the claims against it are ‘based on’ the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.” Id. at 167-68 (emphases added). Acknowledging that “literal application of the statutory test and procedure ‘would create grave constitutional problems where . . . the [nonmovant’s] action asserts a legitimate, cognizable claim!,]’ ” Duracraft, 427 Mass. at 167 n.19 (citation omitted), courts have construed the term “based on” to “exclude motions brought against meritorious claims with a substantial basis other than or in addition to the petitioning activities implicated.” Id. at 167. Requiring this showing enables courts “to distinguish meritless from meritorious claims, as was intended by the Legislature!,]” id. at 167-68, while at the same time protecting “the rights of opposing parties! ] to petition the courts for redress of wrongs unlawfully inflicted by another . . .” The Cadle Co. v. Schlichtmann, 448 Mass. 242, 249 (2007); see Kalter v. Wood, 67 Mass.App.Ct. 584, 591 (2006)[7] (noting “uneasy line [§59H walks] between protecting the right of citizens to petition government for redress of grievances and preserving the longstanding common-law right of individuals to seek redress in court for defamation and other civil wrongs”).
“If the moving party fails to make this showing, the special motion is denied.” The Cadle Co., 448 Mass. at 249. “If this showing is made, then the burden shifts to the nonmoving party!,]” id., who must show that “(1) the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party’s acts caused actual injury to the responding party.” G.L.c. 231, §59H. The preponderance of the evidence standard applies to the first part of the nonmovant’s *215 burden, thereby “placfing] the burden on the nonmov-ing party, as the Legislature intended but without creating an insurmountable barrier to relief.” Baker v. Parsons, 434 Mass. 543, 553-54 (2001).
Keating has filed a special motion to dismiss, arguing that the Defendants’ counterclaims have no substantial basis other than Keating’s petitioning activity alone.
I. Preliminaiy Considerations
The Defendants dispute that G.L.c. 231, §59H applies in this case because Keating did not comply with the statutes filing requirements and, even if it did, Keating is not the type of party to whom the Legislature intended the statute to apply.
A. Timing
Roads filed its counterclaim against Keating on August 30, 2007, and Sarao filed his counterclaim against Keating on December 17, 2007. Section 59H of G.L.c. 231 permits parties to file a special motion to dismiss “within sixty days of the service of the complaint or, in the court’s discretion, at any later time upon terms it deems proper.” Keating filed its special motions to dismiss the Defendants’ counterclaims on January 9, 2008. This filing date is within the sixty-day period with respect to Sarao’s counterclaim, but it is outside the sixty-day period as to Roads’s counterclaim.
This court exercises its discretion in permitting Keating to file its special motion to dismiss Roads’s counterclaim after the expiration of the sixty-day period. G.L.c. 231, §59H. It is reasonable for Keating to have waited for both Defendants to have filed their counterclaims before filing its special motions to dismiss. Indeed, Keating filed its “Notice of special motion to dismiss” as to both Defendants on December 21, 2007, four days after Sarao filed his counterclaim, and Keating filed a single memorandum of law in support of both its special motions to dismiss.
The timing requirement of G.L.c. 231, §59H, does not bar Keating’s special motion to dismiss Roads’s counterclaim. See, e.g., Kalogianis v. Leone, 50 Mass.App.Ct. 910, 911 (2000), overruled on other grounds by Fabre v. Walton, 436 Mass. 517, 522 n.7 (2002) (Superior Court did not err in denying special motion to dismiss on timeliness grounds because “judge implicitly recognized that he could have allowed the late filing,... by stating, ‘had the court addressed the merits of the motion, the court would be inclined to deny it’ ”), S.C., 441 Mass. 9 (2004); Donovan v. Gardner, 50 Mass.App.Ct. 595, 596-97, 602 (2000) (Superior Court allowed special motion to dismiss filed “three years after the plaintiffs’ complaint was filed” and affirming judge’s decision “that it would be unjust to award these [successful movants] all three years’ worth of discoveiy, because the delay in filing the special motion was unwarranted”).
B. Keating’s Status as Special Movant
The Defendants argue that Keating cannot avail itself of G.L.c. 231, §59H’s protections because Keat-ing, as a corporation seeking to collect allegedly outstanding debts, is not within the class of parties the Legislature intended the statute to protect. The anti-SLAPP statute “applies to private parties of limited means.” MacDonald v. Paton, 57 Mass.App.Ct. 290, 291-92 (2003). The Appeals Court, however, has not prevented a party from bringing a special motion to dismiss on the grounds that the party is a corporation. See, e.g., North Am. Expositions Co. Ltd. P’ship v. Corcoran, 70 Mass.App.Ct. 411, 418-19 (2007) (corporate and individual defendants were not entitled to protection under G.L.c. 231, §59H, because challenged activily occurred before charitable foundation not legislative, executive, or judicial body, thereby removing it from statute’s scope), review granted, 450 Mass. 1104 (Dec. 21, 2007); SMS Fin. V, LLC v. Conti, 68 Mass.App.Ct. 738, 746-47 (2007) (affirming allowance of plaintiff corporation’s special motion to dismiss because its “employment of legal mechanisms to obtain trustee process attachments and approval of foreclosure of the real estate mortgages plainly constituted petitioning activity ... [and] [t]here was no other basis for the [defendant’s] claims of abuse of process and violation of G.L.c. 93A); Global NAPs, Inc. 63 Mass.App.Ct. at 606-07 (denial of corporation’s special motion to dismiss against its corporate competitor was proper where challenged activities were not petitioning but merely tangential comments and incidental observations that concerned topic that attracted governmental attention).
The anti-SLAPP statute was not “intended to reach suits . . . between two corporate competitors involved in other ongoing litigation, where the special motion may have been deployed not to limit ‘strategic litigation’ but as an additional litigation tacticU” Duracraft Corp., 427 Mass. at 163. But see Global NAPs, Inc., 63 Mass.App.Ct. at 601, 602, 606-07 (affirming denial of special motion to dismiss because activities were not petitioning activities, and not because plaintiff and defendant were competing corporations “frequently, if not constantly, involved in proceedings before courts and other governmental entities”). These circumstances do not appear in this case. Keating’s status as a corporation is therefore not a bar to its bringing a special motion to dismiss under G.L.c. 231, §59H.
II. Application of the Statute
A. Keating’s Burden
As the special movant Keating’s “threshold” burden is to show “that the claims against it are ‘based on’ the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities.” Duracraft, 427 Mass. at 167-68. The court must first determine whether Keating engaged in a petitioning activity and, if so, determine whether the *216 Defendants’ counterclaims are based solely on that petitioning activity.
1. Petitioning Activity
Keating argues that its complaint as well as the other papers it has filed in this case constitute petitioning activities. The anti-SLAPP statute defines petitioning activity as “any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [or] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding . . G.L.c. 231, §59H. The filing of a complaint with the Superior Court is a written statement submitted to a judicial body. Id. Keating’s amended complaint is therefore petitioning activity within the scope of G.L.c. 23, §59H.
The filing of the complaint triggers the court’s consideration of an issue, thus any documents filed in the course of that action are written statements made “in connection with an issue under [the court’s] consideration or review . . .” Id. North Am. Expositions Co. Ltd. P’ship, 70 Mass.App.Ct. at 420-21 (“in connection with” “pertains to statements made to influence, inform, or at the very least, reach governmental bodies — ■ either directly or indirectly,” quoting Global NAPs, Inc., 63 Mass.App.Ct. at 605). The documents Keating filed in this case are petitioning activities within the scope of G.L.c. 231, §59H, because they are statements Keating intended to inform the court of its allegations against the Defendants. See, e.g. Fabre, 436 Mass. at 523 (“The filing of a complaint for an abuse protection order and the submission of supporting affidavits as petitioning activities encompassed within the protection afforded by G.L.c 231, §59H”); Baker, 434 Mass. at 549 (affirming allowance of special motion to dismiss because defendants’ letter to federal agency “in connection with government agency reviews of [plaintiffs] application to develop property” constituted petitioning activity); Wynne v. Creigle, 63 Mass.App.Ct. 246, 249, 253-54 (2005) (defendant’s statement to media in connection with interdepartmental investigation of plaintiff was petitioning activity).
2. Based on Petitioning Activities
The anti-SLAPP statute does not extend protection to a defendant against whom a plaintiff has asserted “claims with a substantial basis other than or in addition to the petitioning activities implicated.” Duracraft Corp., 427 Mass. at 157. Under this second prong of the threshold burden, the special movant must establish that the nonmovant’s “claims against it are ‘based on’ the petitioning activities alone . . .’’ Id. (emphasis added).
a. Roads
In its counterclaim, Roads asserts that, by making fraudulent representations to the court and to Roads “with respect to the abandonment of dwellings, the waiver of the Statute of Limitations, and the validity of balances allegedly due and owing by Roads to” Keat-ing, Roads Counterclaim 9111, Keating committed fraud and violated G.L.c. 93A, §11. Keating’s amended complaint and the papers filed in this case are protected petitioning activities. Roads’s counterclaim does not point to any other action as the basis for its allegations.
Roads explains that it “it is not complaining about Keating’s right to file a complaint or affidavit, Roads is complaining about the false statements in paragraph B of Keating’s First Amended Complaint and various related Affidavits filed in this lawsuit.” Roads’s Opposition to Keating’s Special Motion to Dismiss, at 11. By Roads’s own admission, its counterclaim is based on Keating’s petitioning activities. Keating has met its burden with respect to Roads’s counterclaim.
b. Sarao
In its counterclaim, Sarao alleges that Keating violated G.L.c. 93A by initiating an action and obtaining a default judgment against Sarao even though “it knew that the alleged obligations of Roads Corporation, as set forth in [Keating’s] First Amended Complaint, were barred by the applicable statute of limitations, were unliquidated and in dispute and/or were otherwise not recoverable . . .” Sarao’s Counterclaim, 914(a). Keating also allegedly violated G.L.c. 93A because it “attributed false and misleading statements to Sarao individually and/or to Roads including (i) that Roads agreed with amounts Keating claimed were due; (ii) that Roads waived the Statute of Limitations!;] and (iii) that Roads reaffirmed amounts due Keating all for the sole purpose of creating a claim against [Sarao], individually under the credit application personal guaranty . . .” Sarao’s Counterclaim, 914(b).
These allegations are solely based on Keating’s amended complaint and Keating’s filings concerning its motion for a default judgment.[8] Keating has met its burden with respect to Sarao’s counterclaim.
B. The Defendants’ Burden
As Keating has satisfied its burden, the burden shifts to the Defendants to establish that Keating’s exercise of its petitioning right “was devoid of any reasonable factual support or any arguable basis in law” and that her acts “caused actual injury” to the Defendants. G.L.c. 231, §59H.
1. Actual Injury
The second prong of the Defendants’ burden is to demonstrate that the petitioning activity has caused them “actual injury.” In its counterclaim Roads alleges that Keating’s allegedly fraudulent statements in its amended complaint and the documents fried with the court “forced” Roads to “seek Relief From a Default Judgment that never should have been entered and defend this civil action, expending monies, costs, expenses and time away from its business.” Roads’s *217 Counterclaim, ¶ 13. In a less detailed statement than Roads’s, Sarao asserts in his counterclaim that Keating’s unfair and deceptive acts and practices “damaged” him. Sarao’s Counterclaim, ¶5. For purposes of this motion, the Defendants have satisfied this prong of their burden.
2. Reasonable Factual Support and Arguable Basis in Law
To oppose Keating’s special motions to dismiss, the Defendants, as the non-movants, must also “show by a preponderance of the evidence that the moving parly lacked any reasonable factual support or any arguable basis in law for its petitioning activity.” Baker, 434 Mass. at 553-54.
a. Reasonable Factual Support
The Defendants must demonstrate through their pleadings and affidavits that Keating’s allegations are devoid of any factual support.
Keating has provided an affidavit in which its credit manager, Donna St. Laurent, lists thirty-two contracts for which payments from the Defendants are still allegedly outstanding; attached to the affidavit, supporting the allegations, is a “Subcontractor Account” sheet for each of the thirty-two contracts. The copies of checks attached to Eric Sarao’s affidavit appear to be checks from Roads to Keating issued between June 5, 2006, and April 6, 2007. Keating’s president, James Reger, notes that the checks “referenced in the Eric Sarao affidavit and alleged to have been sent by Roads to Keating since June[ ] 2006 have been countersigned by an individual believed to be the Surety Claims Manager of XL Surety . . .” Roads’s Opposition to Keating’s Special Motion to Dismiss, Exhibit 3, James Reger Affidavit (7/19/2007), ¶4 (emphasis added). The Defendants have not demonstrated that Keating’s claim is devoid of factual support; rather, the existence of the checks attached to Eric Sarao’s affidavit create a question of fact as to whether Roads has satisfied any part of the allegedly outstanding debt listed in Donna St. Laurent’s affidavit.
The Defendants also argue that Keating’s claim that the Defendants waived the statute of limitations defenses is devoid of factual support. In his affidavit, Keating’s president, James Reger, states that whenever Keating asked the Defendants about the payments that remained outstanding, the Defendants promised “that Keating would be paid for the amounts represented in this lawsuit, in order to induce Keating to continue providing Roads Corporation with various services and materials on public highway construction projects.” Roads’s Opposition to Keating’s Special Motion to Dismiss, Exhibit 2, James Reger Affidavit (6/7/2007), ¶6. In her affidavit, Donna St. Laurent corroborates this statement concerning the Defendants’ promises and states that “Keating trusted these promises from Roads over the years; as a result, bonding rights on each of the thirty-three projects referenced in this litigation lapsed, as well as, in certain places, the Massachusetts contract statute of limitations.” Roads’s Opposition to Keating’s Special Motion to Dismiss, Exhibit 6, Donna St. Laurent Affidavit, ¶6. Roads’s president states in his affidavit that he “know[s] of no time any person connected with Roads Corporation assured [Donna St.) Laurent or anyone from Keating that these balances would be paid, since at all times these balances were disputed.” Roads’s Opposition to Keating’s Special Motion to Dismiss, Exhibit 4, Eric Sarao Affidavit (7/10/2007), 'll 13. This statement does not demonstrate that Keating’s allegation is devoid of factual support, but that the Defendants dispute having made any promises to Keating that would preclude them from asserting the statute of limitations as a defense.
Keating also points to an August 2, 2006 e-mail as the Defendants’ “largely confirming the balances due Keating.” Keating Memorandum of Law in Support of Special Motion to Dismiss, at 8. St. Laurent appears to have sent this e-mail to James Seger to which she attached a balance sheet indicating the outstanding amounts due from Roads; James Seger in turn forwarded the attachment to Eric Sarao the same day. The Defendants dispute the weight Keating places on the existence of this e-mail, including whether “Eric Sarao received or acknowledged the email.” Roads’s Opposition to Keating’s Special Motion to Dismiss, at 5. The Defendants have merely created a factual dispute.
Finally, Keating argues that Sarao’s November 2005 move to Florida tolled the statute of limitations period. The Defendants have not demonstrated that this claim is devoid of factual support. In his affidavit, Sarao confirms that he moved to Florida in 2005, and he states that he lived at various addresses, including with his estranged wife, in a house his brother-in-law owned, and “with friends and family.” Keating’s Memorandum of Law in Support of its Special Motion to Dismiss, Exhibit 6, John Sarao Supplemental Affidavit (10/15/2007), ¶18.
The Defendants have failed to demonstrate that Keating’s claims of an outstanding debt and statute of limitations waiver are devoid of factual support.
b. Arguable Basis in Law
In Baker, the Supreme Judicial Court established the application of the preponderance of the evidence standard to the non-moving party’s burden. 434 Mass. at 553-54. In demonstrating that they have satisfied this standard with respect to this aspect of their burden, the Defendants “must show that no reasonable person could conclude that there was [a basis in law] for” the petitioning activity. Id. at 555 n.20 (alteration in original). In its complaint, Keating asserted claims arising out of the Defendants’ failure to pay it for services rendered.
*218 Keating argues that the Defendants breached the credit agreement by failing to pay Keating for the labor and materials it supplied to the Defendants on construction projects between 1997 and 2004. Contracts between Keating and the Defendants for each of those projects contained a provision that makes the owners’ payments to Roads for the construction projects a condition precedent to Roads’s payments to Keating.[9] Keating alleges that the Defendants did not make payments to it on those projects for which it received payments from the owners.
“The general rule is that a contract action accrues at the time the contract is breached.” LeMaitre v. Massachusetts Tpk. Auth., 70 Mass.App.Ct. 634, 637 n.10 (2007), review granted, 450 Mass. 1109 (Feb. 28, 2008), quoting Berkshire Mut. Ins. Co. v. Burbank, 422 Mass. 659, 661 (1996); see Wallis v. Inhabitants of Wenham, 204 Mass. 83, 88 (1910) (“Until the condition precedent has been performed the liability of the contractor under the agreement as to the time of completion does not accrue”). The contract action accrues at this time “even though a specific amount of damages is unascertainable at the time of breach or even if damages may not be sustained until a later time.” Nortek, Inc. v. Liberty Mut. Ins. Co., 65 Mass.App.Ct. 764, 768 (2006), quoting International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass.App.Ct. 215, 221 (1990). “An action for breach of contract must be brought within six years after the cause of action accrues.” Id., citing G.L.c. 260, §2. Keating claims that the Defendants received payments from the owners in the six years prior to Keating’s commencing its action, thereby making Keating’s action timely; to the extent the Defendants’ receipt of payments predated that six-year period, Keating argues that the Defendants waived and/or are estopped from relying upon the statute of limitations defense through their actions and/or because Sarao’s leaving the state tolled the statute of limitations.
The Defendants focus their argument on Keating’s contention that they waived the statute of limitations defense; arguing that any waiver on their part has to have been in writing. Section 13 of G.L.c. 260 provides that “(n]o acknowledgment or promise shall be evidence of a new or continuing contract whereby to take an action of contract out of the operation of this chapter or to deprive a party of the benefit thereof, unless such acknowledgment or promise has been made by, or is contained in, a writing signed by the party chargeable thereby.” This statute the Defendants argue, precludes Keating from relying on any promise to pay the Defendants allegedly made as waiving the statute of limitations.
The Defendants are correct that any oral promise to pay does not serve as a waiver of the statute of limitations. G.L.c. 260, §13. With respect to the purported e-mail reaffirmation serving as the required writing, “the written acknowledgment or promise must be an unqualified acknowledgment of the debt ... or an unconditional promise to pay the debt.” Epstein v. Seigel, 396 Mass. 278, 279 (1985). Merely forwarding Keating’s balance sheet to the Defendants does not satisfy this requirement.
These conclusions, however do not preclude Keating’s claims from having an arguable basis in law. First, the parties have not provided the dates on which Roads received payments from the owners on the projects for which Keating alleges it has not yet been paid; it may be that such payments, and as a result, the Defendants’ alleged breaches, occurred within the six years prior to Keating’s filing this action. Second, Keating points to Sarao’s Florida residency as tolling the statute of limitations. Section 9 of G.L.c. 260 tolls the statute of limitations “(i]f, when a cause of action hereinbefore mentioned accrues against a person, he resides out of the commonwealth, . . . and if, after a cause of action has accrued, the person against whom it has accrued resides out of the commonwealth ...” Sarao’s November 2005 move to Florida could toll the six-year statute of limitations.
Finally, to meet its burden of proving that the Defendants are estopped from asserting the statute of limitations as a bar to their claim, Keating
must show [1] that the “statements of the (D)efend-ant[s] lulled [Keating] into the false belief that it was not necessary ... to commence action within the statutory period of limitations . . . , [2] that [Keat-ing] was induced by the statements to refrain from bringing suit, as otherwise [Keating] would have done, and was thereby harmed, and [3] that the [D]efendant[s] ‘knew or had reasonable cause to know that such consequence might follow.’ ”
Pagliarini v. Iannaco, 440 Mass 1032, 1032 (2003) (ellipses in original), quoting Ford v. Rogovin, 289 Mass. 549, 552 (1935); Clickner v. City of Lowell, 422 Mass. 539, 544 (1996) (holding that party asserting estoppel theory has “heavy burden” to prove that all elements are present). Keating “must also show that reliance on the [Defendants’] statements was reasonable.” Id., citing Knight v. Lawrence, 331 Mass. 293, 295 (1954). Estoppel on these grounds “will not apply if a reasonable time remains within the limitations period for filing the action once the circumstances inducing the delay have ceased[.]” Id. (citation omitted). The circumstances may be found to have ceased “once the plaintiffs hired an attorney and directed that suit be filed.” Id. at 1033.
With the affidavits of James Reger and Donna St. Laurent, Keating has demonstrated a basis for a conclusion, by a preponderance of the evidence, that the Defendants’ assurances that payments were forthcoming caused Keating to refrain from bringing suit to recover the outstanding amounts. Without details concerning the timing of these promises, it is unclear whether such reliance was reasonable or whether “the circumstances inducing the delay” ceased prior to or *219 after the expiration of the limitation periods as to each construction project for which the Defendants allegedly owe Keating.
A reasonable person would conclude that there is a basis in law for Keating’s petitioning activity in which it alleged that the Defendants failed to pay it for work on construction projects between 1997 and 2004, and that the Defendants are estopped from relying on the statute of limitations to bar Keating’s claims. The Defendants have failed to meet their burden as to this prong.
C. Conclusion
When Keating met its threshold burden that the Defendants’ counterclaims were based solely on Keating’s filing of its complaint and seeking a default judgment against the Defendants, the burden shifted to the Defendants to demonstrate by a preponderance of the evidence that Keating’s petitioning activities were devoid of any reasonable factual support or arguable basis in law and caused the Defendants actual injury.[10] The Defendants failed to meet this burden. Keating’s special motion to dismiss will be allowed
D. Attorneys Fees and Costs
“If the court grants such special motion to dismiss, the court shall award the moving party costs and reasonable attorneys fees, including those incurred for the special motion and any related discovery matters.” G.L.c. 231, §59H. The Supreme Judicial Court has “read this language to mean that attorneys fees and costs are mandatory for successful special motions, and the amount of the award need not be limited to legal work incurred in bringing the special motion itself.” Office One, Inc. v. Lopez, 437 Mass. 113, 126 (2002); MacDonald, 57 Mass.App.Ct. at 296 (“A court has no discretion whether to grant costs and reasonable attorneys fees; under the statute the grant of both is mandatory”). Keating is therefore entitled to appropriate attorneys fees and costs. See Donovan, 50 Mass.App.Ct. at 601-02 (affirming lower court’s limiting attorneys fees and costs to movant who filed special motion to dismiss late).
III. Fraud on the Court
The Defendants argue that Keating committed fraud on the court through its motion for default under Mass.R.Civ.P. 56(a) and.its subsequent judgment under Mass.R.Civ.P. 55(b). “Fraud on the court implies corrupt conduct and embraces ‘only that species of fraud which does, or attempts to, defile the court itself.’ ” Munshani v. Signal Lake Venture Fund II, LP, 60 Mass.App.Ct. 714, 718 (2004), quoting Winthrop Corp. v. Lowenthal, 29 Mass.App Ct. 180, 184 (1990). “Fraud on the court has been found in cases where a party has perjured him or herself to the court and the court has relied upon the fabrications when reaching a judgment.” Commissioner of Prob. v. Adams, 65 Mass.App.Ct. 725 730 (2006); Munshani, 60 Mass.App.Ct. at 718 (holding that fraud on the court involves “the most egregious misconduct” and “maybe by parties as well as by their attorneys”).
When a fraud on the court is shown through clear and convincing evidence to have been committed in an ongoing case, the trial judge has the inherent power to take action in response to the fraudulent conduct. The judge has broad discretion to fashion a judicial response warranted by the fraudulent conduct. Dismissal of claims or of an entire action may be warranted by the fraud, ... as may be the entry of a default judgment. . .
Rockdale Mgmt. Co., Inc. v. Shawmut Bank, N.A., 418 Mass. 596; 598 (1994).
The Defendants have failed to demonstrate through clear and convincing evidence that Keating committed fraud on the court. The Defendants provided a copy of the process server’s return of service, dated October 25, 2006, indicating that Eric Sarao’s residence “APPEARS TO BE ABANDONED!,]” Roads’s Opposition to Keating’s Special Motion to Dismiss, Exhibit 5, Return of Service (capitalization in original); and an affidavit from Keating’s attorney, Sally Sauer, who stated that she personally observed that Eric Sarao’s residence “appeared to have been abandoned.” Roads’s Opposition to Keating’s Special Motion to Dismiss Exhibit 1, Sally Sauer Affidavit, ¶3. She also stated that, based on her personal observation, Roads’s business location “was shuttered and closed, appearing to have been abandoned, as opposed to earlier observations . . . when the business appeared to be operating.” Roads’s Opposition to Keating’s Special Motion to Dismiss, Exhibit 1, Sally Sauer Affidavit, ¶2. The caption of Sally Sauer’s affidavit indicated that Keating filed the affidavit in support of its motion to extend time to effect service on Roads. Finally, in his affidavit filed in support of Keating’s opposition to Roads’s motion for relief from judgment, Keating’s president, James Reger, stated that he believes Roads is a defunct company and that Eric Sarao’s “absence at particular times from [his residence] could be accounted for by the fact that he was also running [from Keating’s suit], and probably winding down the business of Roads ... in Connecticut . . .” Roads’s Opposition to Keating’s Special Motion to Dismiss, Exhibit 3, James Reger Affidavit (7/19/2007), ¶8 (emphasis in original).
Clear and convincing evidence “involves a degree of belief greater than the usually imposed burden of proof by a fair preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt imposed in criminal cases.” Adoption of Iris, 43 Mass.App.Ct. 95, 105 (1997) (citation omitted), S.C., 427 Mass. 582 (1998). “The requisite proof must be strong and positive; it must be ‘full, clear and decisive.’ ” Id. quoting Callahan v. Westinghouse Broad. Co., Inc., 372 Mass. 582, 584 (1977). The Defendants *220 have submitted an affidavit from Roads’s president, Eric Sarao, who stated that he has lived at his residence “for over seven years. At no time [has] [he] ever ‘abandoned’ this residence.” Roads’s Opposition to Keating’s Special Motion to Dismiss, Exhibit 4, ¶2. He further states that Keating’s allegations concerning his having abandoned his residence and Roads’s being out of business are false. Eric Sarao’s contentions are insufficient “ ‘to convey to a high degree of probability’ that the proposition is true.” Adoption of Iris, 43 Mass.App.Ct. at 105, quoting Tosti, 394 Mass. at 493 n.9.
The Defendants have failed to demonstrate, through clear and convincing evidence, that Keating’s actions constitute fraud on the court.[11]
ORDER
The plaintiff P.J. Keating Company’s special motion to dismiss is ALLOWED, and the defendants Roads Corporation and John Sarao’s counterclaims are DISMISSED. The defendants Roads Corporation and John Sarao are ORDERED to pay the plaintiff RJ. Keating Company reasonable attorneys fees and costs. The plaintiff will file a fee application within 30 days.

 Keating filed two special motions to dismiss but a single memorandum of law in support of the motions.

 In its amended complaint, Keating lists thirty construction projects; Keating’s credit manager, Donna St. Laurent, states in her affidavit in support of Keating’s motion for a default judgment that there are thirty-three projects for which payments are outstanding, but she lists only thirty-two.

 Keating has not provided copies of contracts it had with Roads, and, in its amended complaint, Keating does not mention the existence of any contract other than the credit agreement.

 In his June 2007 affidavit in support of Keating’s motion for an ex parte real estate attachment in this case, Keating’s president, James Reger states that
Keating has received payment in regard to other Roads Corportion past due amounts from the Massachusetts Highway Department, United States Fidelity and Guaranty Company, and XL Surety. These payments are not related to the present action, in regard to which there is no possibility of payment from any source other than John Sarao’s personal assets or the assets, such as they may be, of Roads Corporation.
Roads’s Opposition to Keating’s Special Motion to Dismiss, Exhibit 2, James Reger Affidavit (6/7/2007), ¶9.

 Upon this filing, “[a]ll discovery proceedings shall be stayed . . .” G.L.c. 231, §59H. Keating’s request to that effect in its special motion to dismiss is therefore proper, and Roads’s attempt to characterize it as “an obvious attempt to get around this Court’s order to agree to the usual stipulations and for their clients to answer the questions" is inconsistent with the statutory requirement. Roads’s Memorandum of Law in Opposition to Keating’s Special Motion to Dismiss, at 6. The order to which Roads refers is the court’s order in response to disputes concerning depositions. The court issued the order on December 14, 2007, before Keating had filed its special motions to dismiss. It appears that the order was in response to deposition disputes based on the docket’s description of motions addressed at a December 14, 2007, hearing.

 “A petition for further appellate review was granted in Kalter, 447 Mass. 1113 . . . (2006). Before the case was considered by the Supreme Judicial Court, the parties filed a stipulation of dismissal, and the case, therefore, has been dismissed by the Supreme Judicial Court.” North Am Expositions Co. Ltd. P'ship v. Corcoran, 70 Mass.App.Ct. 411, 417 n.13 (2007), citing SJC No. 09900 (June 27, 2007), review granted, 450 Mass. 1104 (Dec. 21, 2007).

 The Defendants also attempt to characterize their counterclaims as being “in response to” rather than “based on” Keating’s complaint. Roads’s Opposition to Keating’s Special Motion to Dismiss, at 9; Sarao’s Opposition to Keating’s Special Motion to Dismiss, at 5. The language in Duracraft Corp. on which the Defendants rely, however, does not support their argument. In holding that the special movant must make a threshold showing “that the claims against it are ‘based on’ the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities!,] the Supreme Judicial Court added a clarifying footnote. 427 Mass. at 167-68, 168 n.20. The court: ’’clariflied] that ‘based on’ does not mean ‘In response to’: although claims and related pleadings filed in court may be classified as petitioning activities, plaintiffs are not thereby immunized from counterclaims filed in response to the claim." Id. at 168 n.20. With this explanation, the Court was merely stressing that the filing of a counterclaim in and of itself does not trigger the protection of the anti-SLAPP statute: the counterclaim must have no basis other than the petitioning activity. See id. at 167-68, 168 n.20.
For example, plaintiff files a breach of contract claim against defendant: defendant files a counterclaim against plaintiff alleging that piaintiffbreached first, thereby releasing defendant from any obligation to perform under the contract. In this example, defendant counterclaimed against plaintiff in response to plaintiffs breach of contract claim, but the anti-SLAPP statute does not apply because the defendant’s counterclaim is not based on plaintiffs petitioning activity, i.e., the complaint.

 Keating also claims they had an understanding, whether in writing or not, that Roads would pay Keating when it, Roads, was paid. The Defendants do not dispute this claim.

 To the extent that this burden extends to Keating’s motion for default judgment and the supporting affidavits, the Defendants have failed to satisfy it. As discussed below, in the context of Roads’s fraud on the court argument, Roads merely disputes the facts Keating alleged with respect to the abandonment of Eric Sarao’s residence and Roads’s business location. Pointing out this dispute does not demonstrate that Keating's allegations were devoid of reasonable factual support. Rule 55(a) of the Massachusetts Rules of Civil Procedure permits a clerk to enter the default of party “has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise . . .” Keating’s assertions in support of its motion for default under Mass.R.Civ.P. 55(a) had an arguable basis in law.

 To the extent the Defendants argue that Keating committed fraud on the court by filing its complaint, this court concluded, above, that the Defendants cannot establish by a preponderance of the evidence that Keating’s complaint has no reasonable factual support or arguable basis in law. The Defendants cannot demonstrate under the higher standard of clear and convincing evidence that this complaint constitutes egregious misconduct. Munshani, 60 Mass.App.Ct. at 718. The Defendants have failed to demonstrate that Keating committed fraud on the court by that action as well.